**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

KEVIN J. KRUSE,

        Defendant.

No. 08-CR-4075-LRR

**SENTENCING MEMORANDUM**

_____

*TABLE OF CONTENTS*

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **RELEVANT PRIOR PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . . . . **2**

III.   **SENTENCING FRAMEWORK** . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

IV.   **EVIDENTIARY RULES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

V.    **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
       A.    *A.B.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**
       B.    *K.L.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
       C.    *J.M.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

VI.   **ISSUES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

VII.  **PRE-DEPARTURE OFFENSE LEVEL** . . . . . . . . . . . . . . . . . . . . . . **10**
       A.    *Base Offense Level* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**
       B.    *Custody, Care or Control* . . . . . . . . . . . . . . . . . . . . . . . . . **10**
       C.    *Cross Reference—USSG §2A3.1(c)(2)* . . . . . . . . . . . . . . . . . **10**
            1.   *The 2005 Recording* . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
            2.   *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**
       D.    *Sexually Exploiting Minors—USSG §2G2.1* . . . . . . . . . . . . . **12**
            1.   *Under 12 years of age* . . . . . . . . . . . . . . . . . . . . . . . . . **12**
            2.   *Commission of a sexual act* . . . . . . . . . . . . . . . . . . . . . . **12**
            3.   *Relative of a minor* . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
            4.   *"Distribution"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
                a.   *Defendant's argument* . . . . . . . . . . . . . . . . . . . . . **13**
                b.   *"Distribution" defined* . . . . . . . . . . . . . . . . . . . . **13**

           *c.*      *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

      *5.*      *Multiple Count Adjustment* . . . . . . . . . . . . . . . . . . . . *14*

           *a.*      *Defendant's argument* . . . . . . . . . . . . . . . . . . . . . *14*

           *b.*      *Analysis of §2G2.1(d)* . . . . . . . . . . . . . . . . . . . . . *14*

           *c.*      *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

  *E.*      *Acceptance of Responsibility* . . . . . . . . . . . . . . . . . . . . . . . *16*

  *F.*      *Enhancement under §4B1.5* . . . . . . . . . . . . . . . . . . . . . . . . *16*

           *a.*      *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

           *b.*      *Application* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

*VIII.*  *CRIMINAL HISTORY CATEGORY* . . . . . . . . . . . . . . . . . . . . . . . . *18*

*IX.*   *PRE-DEPARTURE ADVISORY SENTENCING GUIDELINES RANGE* . *18*

*X.*    *DEPARTURES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

  *A.*      *Upward Departure Pursuant to §4A1.3* . . . . . . . . . . . . . . . . . . *19*

  *B.*      *Upward Departure Pursuant to §5K2.21* . . . . . . . . . . . . . . . . . *22*

*XI.*   *FACTORS IN 18 U.S.C. § 3553(a)* . . . . . . . . . . . . . . . . . . . . . . . . *25*

*XII.*  *DISPOSITION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *27*

## *I. INTRODUCTION*

The matter before the court is the sentencing of Defendant Kevin J. Kruse.

## *II. RELEVANT PRIOR PROCEEDINGS*

On September 24, 2008, a grand jury returned a three-count indictment ("Indictment") (docket no. 2-2) against Defendant. All three counts charged Defendant with Aggravated Sexual Abuse, in violation of 18 U.S.C. § 2241(c).[1] Specifically, the grand jury alleged Defendant knowingly crossed a state line with the intent to engage in

---

[1] Title 18 U.S.C. § 2241(c) provides, in relevant part:

> Whoever crosses a State line with intent to engage in a sexual act with a person who has not attained the age of 12 years, or [. . .] knowingly engages in a sexual act with another person who has not attained the age of 12 years, [. . .] or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life.

2

a sexual act with three children under twelve years of age.

On November 10, 2008, Defendant pled guilty to Count 1 of the Indictment before a United States Magistrate Judge. On the same date, the Magistrate Judge filed a Report and Recommendation (docket no. 22) in which he recommended that the undersigned accept Defendant's guilty plea. On November 25, 2008, the undersigned accepted Defendant's guilty plea.

On March 3, 2009, the United States Probation Office ("USPO") released a draft of Defendant's Presentence Investigation Report ("PSIR"). Both parties lodged objections to the draft PSIR. On March 26, 2009, the USPO released a revised PSIR. On April 1, 2009, the USPO released a second revised PSIR.

On April 13, 2009, the parties filed a "Joint Sentencing Stipulation and Waiver of Appeal" ("Stipulation") (docket no. 34). In the Stipulation, the parties submitted that they had agreed to resolve all their objections to the PSIR by stipulating to a Guidelines range of 360 months of imprisonment. The parties requested that the court adopt and follow the Stipulation. Subsequently, the court notified the parties via email that it declined to adopt or follow the Stipulation.

On April 13, 2009, Defendant filed his Sentencing Memorandum ("Def. Sent. Mem.") (docket no. 35). On April 16, 2009, the government filed its Sentencing Memorandum ("Gov. Sent. Mem.") (docket no. 37). On April 22, 2009, the court notified Defendant that it might depart or vary upward from his advisory Sentencing Guidelines range. Notice (docket no. 39), at 1.

On April 27, 2009, the court held Defendant's sentencing hearing ("Hearing"). Assistant United States Attorney Timothy T. Duax represented the government. Assistant Federal Public Defender Robert A. Wichser represented Defendant, who was personally present. At the Hearing, the court received evidence and heard argument and granted Defendant the right to allocute. Because of the complexity of the issues presented in this

sentencing, the court reserved ruling pending the instant written sentencing memorandum. The court advised the parties it would take the sentencing issues under advisement, issue a written opinion and then reconvene the Hearing to impose sentence.

All contested issues in Defendant's sentencing are now fully submitted and ready for decision. On May 27, 2009, at 4:00 p.m., the court shall reconvene the Hearing and impose sentence.

## III.  SENTENCING FRAMEWORK

A "district court should begin [a sentencing proceeding] with a correct calculation of the [defendant's] advisory Sentencing Guidelines range." *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). A defendant's Guidelines range "is arrived at after determining the appropriate Guidelines range and evaluating whether any traditional Guidelines departures are warranted." *United States v. Washington*, 515 F.3d 861, 865 (8th Cir. 2008).

"[A]fter giving both parties a chance to argue for the sentence they deem appropriate, the court should consider all of the factors listed in 18 U.S.C. § 3553(a) to determine whether they support the sentence requested by either party." *Braggs*, 511 F.3d at 812. "The district court may not assume that the Guidelines range is reasonable, but instead 'must make an individualized assessment based on the facts presented.'" *Id.* (quoting *Gall v. United States*, 128 S. Ct. 586, 597 (2007)); *see, e.g., Nelson v. United States*, 129 S. Ct. 890, 892 (2009) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.").

The district court "has substantial latitude to determine how much weight to give the various factors under § 3553(a)." *United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009). "If the court determines that a sentence outside of the Guidelines is called for, it 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Braggs*, 511 F.3d at 812

(quoting *Gall*, 128 S. Ct. at 597). "The sentence chosen should be adequately explained so as 'to allow for meaningful appellate review and to promote the perception of fair sentencing.'" *Id.*

## IV. EVIDENTIARY RULES

The court makes findings of fact by a preponderance of the evidence. *See, e.g.*, *United States v. Bah*, 439 F.3d 423, 426 n.1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance of the evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."). The court considers a wide variety of evidence, including the undisputed portions of the PSIR, as well as the testimony and other evidence the parties introduced at the Hearing. The court does not "put on blinders" and only consider the evidence directly underlying Defendant's offense of conviction. In calculating Defendant's Guidelines range, for example, the court applies the familiar doctrine of relevant conduct. *See* USSG §1B1.3 (2008). The Eighth Circuit Court of Appeals has repeatedly held that a district court may consider uncharged, dismissed and even acquitted conduct at sentencing. *See, e.g., United States v. Whiting*, 522 F.3d 845, 850 (8th Cir. 2008); *United States v. Bradford*, 499 F.3d 910, 922 (8th Cir. 2007), *cert. denied*, 128 S. Ct. 1446 (2008). When relevant and "accompanied by sufficient indicia of reliability to support the conclusion that it [was] probably accurate," the court credits hearsay. *United States v. Sharpfish*, 408 F.3d 507, 511 (8th Cir. 2005).

## V. FACTS

The following facts are drawn from the uncontested portions of the PSIR, the Hearing testimony of Detective Ryan Bertrand from the Sioux City Police Department and the other evidence presented at the Hearing:[2]

At all times relevant to the instant action, Defendant made his living as a semi truck

---

[2] The court makes additional factual findings in conjunction with its conclusions of law.

driver. Defendant's work often required him to travel across state lines. Defendant admitted to law enforcement that he both performed and received oral sex on and from three children, A.B., K.L. and J.M., on multiple occasions. All three children were male. Defendant admitted that he intended to sexually abuse all three children. Defendant admitted that he knew all three children were under the age of twelve when he took them on interstate trips and sexually abused them. Defendant told detectives that, prior to some of the trips, he told himself he did not want anything to happen, but he knew something would happen. Defendant also told detectives that he looked forward to his trips with the children "because he could sexually abuse them without concern about someone walking in on them." PSIR at ¶ 24.

In his interview with law enforcement, Defendant admitted that he had a very difficult time controlling his sexual urges around young boys. Defendant was previously imprisoned for charges arising from the sexual abuse of young boys and received treatment for his urges. Defendant told law enforcement that the treatment was only effective for a while and, after he found himself alone in the company of young boys, his urges returned and were difficult to control. Defendant also told law enforcement that he should probably be imprisoned.

### A.  A.B.

A.B. is identified as victim number 1 in Count 1 of the Indictment. Defendant was married to A.B.'s grandmother, R.M.

Defendant's abuse of A.B. began after he took a shower with A.B. at a truck stop. Defendant stated that seeing A.B.'s naked body in the shower pushed Defendant past his "breaking point." *Id.* When A.B. was eight or nine years old, he and Defendant were watching television in Defendant's living room. Defendant reached over, touched A.B.'s groin area and stated: "What's that." *Id.* at ¶ 16. Approximately one week later, Defendant and A.B. performed oral sex on each other in Defendant's den. At that time,

Defendant told A.B. not to tell anyone about the abuse because he would get into trouble. Defendant admits he sexually abused A.B. approximately twenty to thirty times inside Defendant's trailer. The last incident of abuse occurred around 2006 when A.B. was in sixth grade. Defendant took out-of-state trips with A.B. in his semi truck and sexually abused him on those trips. During the abuse, Defendant stated to A.B.: "It feels good. Does it feel good? Do you want to do it tonight?" *Id.* at ¶ 18. On several occasions, Defendant allowed A.B. to drive Defendant's semi truck while sitting on Defendant's lap. Additionally, Detective Bertrand testified that, in his interview with A.B., A.B. stated that he and Defendant watched a *Playboy* DVD together. Defendant disputes this occurred. To the extent it is relevant, the court credits A.B.'s interview with law enforcement and discredits Defendant's allegation. The court finds Defendant and A.B. watched a *Playboy* DVD together.

On a number of trips, A.B.'s cousin, K.L., accompanied Defendant and A.B.[3] While on that trip, A.B., K.L. and Defendant performed sexual acts on each other. Defendant admitted he videotaped and photographed certain sexual acts involving A.B. and K.L. Defendant admitted to law enforcement that, on two occasions, he used a camcorder to record his sexual abuse of A.B. and K.L. Detective Bertrand testified that he spoke with R.M. about the camcorder. R.M. told Detective Bertrand that Defendant received the camcorder as a gift and that he became excited, upset and then cried after he received it.

Defendant used the camcorder to make a recording of A.B. and K.L. in 2005 ("2005 Recording"). At the time Defendant made the 2005 Recording, both boys were under twelve years of age. The 2005 Recording contained images of A.B. and K.L. "touching each other." *Id.* at ¶ 23. The "touching" involved engaging in sexual acts, such as oral sex. Defendant stated that both A.B. and K.L. watched the 2005 Recording.

---

[3] Defendant's abuse of K.L. is discussed in greater detail below.

A.B. recalls watching the video, but K.L. does not. Defendant produced the video because "it was just a funny thing so [A.B. and K.L.] could see how it was happening or see how they looked on tape." *Id.* Defendant told law enforcement that he had completely deleted the video and had watched the tape from the beginning through the end to ensure it was deleted.

### B. K.L.

K.L. is A.B.'s cousin and another grandson of R.M. K.L. is identified as Victim Number 2 in Count 2 of the Indictment. Defendant sexually abused K.L. from approximately June 17, 2004 until June 16, 2007. Defendant admits to only three instances of sexual abuse with K.L. Defendant told law enforcement that he used a "birds and bees" approach in his abuse of K.L. That is, Defendant used a discussion about genitals to lead to touching and oral sex. PSIR at ¶ 24. Apparently, K.L.'s mother had asked Defendant to discuss the "birds and the bees" with K.L. Defendant told law enforcement that he preferred his sexual encounters with A.B. rather than K.L. because he had more of a "connection" with A.B. than K.L.

The first instance of abuse occurred when K.L. reached puberty. He was nine years old. Defendant showed K.L. where "things were and how they worked." *Id.* at ¶ 20. This discussion led to different sex acts, including oral sex, between K.L. and Defendant. Defendant and K.L. also "masturbated each other." *Id.* One incident of sexual abuse involved the trip taken with A.B. in Defendant's semi truck. Defendant stated that K.L. watched the 2005 Recording. On one occasion, Defendant showed K.L. a *Playboy* magazine. K.L. told detectives that, on some occasions, Defendant rubbed his erect penis on K.L.'s anus. Defendant disputes this occurred. After weighing the evidence, the court credits K.L.'s statement to law enforcement and finds that this contact occurred.

K.L. did not report the abuse because he wanted to talk to A.B. to try to provide a "unified front" so the boys would not be disbelieved or accused of trying to improperly

implicate their step-grandfather. Defendant told K.L. not to tell anyone about the abuse because Defendant would find himself in trouble.

## C.  J.M.

J.M. is identified as victim number 3 in Count 3 of the Indictment. Defendant used to date J.M.'s mother, Ms. M. While Defendant and Ms. M. dated, Defendant sexually abused J.M "several times." *Id.* at ¶ 13. The sexual abuse consisted of oral sex and penile fondling. The first instance of sexual abuse occurred in June of 1996. At that time, J.M. was ten years old. The abuse continued until Defendant was around thirteen years old. J.M. often traveled with Defendant in his semi truck, where most of the sexual abuse occurred. Defendant made J.M. feel the abuse "was natural and not out of the ordinary." *Id.* at ¶ 14. At various times while abusing J.M., Defendant stated: "I can't wait. You have the most beautiful cock. I can't wait until you get with your first girlfriend, you're going to tear her up." *Id.* Defendant also watched pornographic films with J.M.

Defendant told law enforcement that, on one occasion, he and J.M. were wrestling. This resulted in Defendant becoming "turned on," which, in turn, led to Defendant's sexual abuse of J.M. *Id.* at ¶ 9. On some occasions when J.M. and Defendant engaged in oral sex, Defendant gave J.M. money. J.M. recalls one instance in which he and his minor friend, T.B., masturbated in front of Defendant. Defendant told J.M. and T.B. that he would give $25 to whoever ejaculated first. Defendant made J.M. feel that the abuse was natural and not out of the ordinary. While Defendant performed oral sex on J.M., J.M. sometimes "tried to escape in his mind and [. . .] detach[] from the situation." *Id.* at ¶ 14.

## VI.  ISSUES

Defendant raises the following six issues with respect to the PSIR's calculation of his advisory Sentencing Guidelines range: (1) whether the court should apply the cross reference set forth at USSG §2A3.1(c)(2) to §2G2.1; (2) whether Defendant "distributed"

child pornography as defined under USSG §2G2.1(b)(3); (3) whether the court should apply the multiple count adjustment for the exploitation of multiple minors under §2G2.1(d); (4) whether Defendant is entitled to a reduction in his offense level for acceptance of responsibility pursuant to USSG §3E1.1(a) & (b); (5) whether a departure under USSG §4A1.3 is warranted for underrepresentation of Defendant's criminal history; and (6) whether a departure under USSG §5K2.21 is warranted for dismissed and uncharged conduct. The government bears the burden of proof on all six issues. *See United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2001) (stating that the government bears the burden to prove sentencing enhancements). The court discusses each of these issues below.

## VII.  PRE-DEPARTURE OFFENSE LEVEL

### A.  Base Offense Level

The parties agree the applicable advisory Sentencing Guideline for Defendant's violation of 18 U.S.C. § 2241(c) is §2A3.1. *See* USSG App. A (Statutory Index). The parties agree Defendant's base offense level is **38**. USSG §2A3.1(a)(1).

### B.  Custody, Care or Control

The parties also agree a **two-level** upward adjustment should apply because the victim in Count 1, A.B., was "in the custody, care or supervisory control of [Defendant]." USSG §2A3.1(b)(3)(A). This brings Defendant's offense level to **40**.

### C.  Cross Reference—USSG §2A3.1(c)(2)

As a general rule, defendants convicted of aggravated sexual abuse are sentenced under §2A3.1. However, "[i]f the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct," the court should ordinarily apply the cross reference in §2A3.1(c)(2) to §2G2.1 for sexually exploiting minors.

## 1.     The 2005 Recording

Defendant objects to the application of the cross reference to §2G2.1 and argues it should not apply because (1) "[Defendant] did not cause, transport, or permit a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct" and (2) "there is no videotape or still image of any such conduct found in the investigation of this matter." Def. Sent. Mem. at 3.

The Commentary to §2A3.1(c)(2) requires a "broad[]" construction of the terms of §2A3.1(c)(2), "includ[ing] all instances where the offense involved employing, using, persuading, inducing, enticing, coercing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing any visual depiction of such conduct." USSG §2A3.1 cmt. (n.5(A)).[4]

The undisputed portions of the PSIR and the interviews of Defendant and A.B., as set forth in Exhibits 2 and 3, respectively, establish that Defendant's offense conduct included Defendant's filming of the 2005 Recording. The 2005 Recording was made on an interstate trip and contained images of minors engaged in sexually explicit conduct.

_____

[4] For purposes of the cross reference, "'sexually explicit conduct' has the meaning given that term in 18 U.S.C. § 2256(2)." *Id.* Section 2256(2) defines "sexually explicit conduct" as:

> **(i)**  graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited;
> **(ii)**  graphic or lascivious simulated:
>> **(I)**  bestiality;
>> **(II)** masturbation; or
>> **(III)** sadistic or masochistic abuse; or
> **(iii)**  graphic or simulated lascivious exhibition of the genitals or pubic area of any person[.]

18 U.S.C. § 2256(2)(B) (emphases in original).

When construing USSG §2A3.1(c) broadly, the court finds the facts surrounding the 2005 Recording clearly demonstrate Defendant "permitted," "caused" and "used" minors, A.B. and K.L., to engage in sexually explicit conduct to produce a visual depiction of this conduct—the 2005 Recording. The fact the 2005 Recording no longer exists does not impact the court's analysis. *See e.g.*, *United States v. Bentley*, 492 F. Supp. 2d 1050, 1055-56 (N.D. Iowa 2007) (Reade, C.J.), *aff'd*, 561 F.3d 803 (8th Cir. 2009). The evidence relating to the 2005 Recording preponderates that the 2005 Recording contained images of child pornography.

### 2. Application

Accordingly, the court **applies the cross reference found at USSG §2A3.1(c)(2) to §2G2.1** for sexually exploiting minors.

### D. Sexually Exploiting Minors—USSG §2G2.1

The parties agree that Defendant's base offense level under §2G2.1 is **32**. Further, the parties agree to the three upward adjustments set forth in §2G2.1(b)(1), §2G2.1(b)(2)(A) and §2G2.1(b)(5). Defendant objects to the application of two additional upward adjustments set forth in §2G2.1(b)(3) and §2G2.1(d)(1). The court discusses each of these upward adjustments, in turn.

### 1. Under 12 years of age

The parties agree that, because neither A.B. nor K.L. had attained the age of twelve at the time Defendant made the 2005 Recording, the offense level under §2G2.1 should be increased by **four levels**. *Id.* at §2G2.1(b)(1). This brings Defendant's offense level to **36**.

### 2. Commission of a sexual act

The parties agree that, because the offense involved "the commission of a sexual act or sexual contact," the offense level under §2G2.1 should be increased by another **two levels**. *Id.* at §2G2.1(b)(2)(A). This brings Defendant's offense level to **38**.

### 3. *Relative of minor*

The parties also agree that, because Defendant was a step-grandfather to A.B. and K.L., the offense level under §2G2.1 should be increased by another **two levels**. *See id.* §2G2.1(b)(5) ("If the defendant was a parent, relative, or legal guardian of the minor involved in the offense, increase by **2 levels**.") (emphasis in original). This brings the offense level under §2G2.1 to **40**.

### 4. *"Distribution"*

Defendant raises his second objection with respect to the upward adjustment in §2G2.1(b)(3), which provides for a **two-level** increase "[i]f the offense involved distribution."

#### a. *Defendant's argument*

Defendant argues this adjustment should not apply because he "did not engage in distribution of child pornography as the term is regularly and characteristically used" and because "no images of any such conduct have been found during the investigation." Def. Sent. Mem. at 3. Defendant's arguments are unavailing.

#### b. *"Distribution" defined*

"Distribution" is defined as

> any act, including possession with intent to distribute, production, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

USSG §2G2.1 cmt. (n.1).

In a similar case, this court noted that when a defendant "turned on his computer, loaded up [. . .] child pornography and directly displayed it to [a minor]," the defendant "thereby 'distributed' it to [the minor], as contemplated in §2G2.2(b)(3)(E)." *United*

*States v. Postel*, 524 F. Supp. 2d 1120, 1123, n.3 (N.D. Iowa 2006) (Reade, C.J.); *see also United States v. Hecht*, 470 F.3d 177, 182-83 (4th Cir. 2006) (holding that defendant's act of pointing his web camera at images of child pornography on his computer screen and transmitting them to an undercover agent through the Internet constituted "distribution" of child pornography within meaning of USSG §2G2.2). Although the relevant guideline in the instant action is USSG §2G2.1 rather than §2G2.2, which was discussed in *Postel* and *Hecht*, the definition of "distribute" is the same under both sections. *Compare* USSG §2G2.1 cmt. (n.1) *with* USSG §2G2.2 cmt. (n.1). Defendant allowed and intended that both boys watch the 2005 Recording, which is evidenced by his comment that he wanted the boys to see how they looked on the 2005 Recording. The court concludes that, when Defendant showed the 2005 Recording to A.B. and K.L., he "distributed" the child pornography contained in that recording. The fact Defendant deleted the 2005 Recording does not change the fact that he distributed it.

### c. Application

In light of the foregoing, the court shall apply the **two-level** increase in USSG §2G2.1(b)(3). This brings Defendant's offense level to **42**.

### 5. Multiple Count Adjustment

Defendant objects to the application of the multiple count upward adjustment for the exploitation of multiple minors in §2G2.1(d).

### a. Defendant's argument

Defendant argues the court should not apply the multiple count adjustment in §2G2.1(d) because Defendant only pled guilty to one count and the application of the multiple count adjustment for a single conviction would be excessive.

### b. Analysis of §2G2.1(d)

Section 2G2.1(d) provides: "If the offense involved the exploitation of more than one minor, Chapter Three, Part D (Multiple Counts) shall be applied as if the exploitation

14

of each minor had been contained in a separate count of conviction." USSG §2G2.1(d)(1).
The relevant provision in Chapter Three, Part D specifically excludes Defendant's offense
from the grouping rule. *Id.* §3D1.2(d). Similarly, the Application Notes to §2G2.1
provide: "multiple counts involving the exploitation of different minors are not to be
grouped together under §3D1.2," and "if the relevant conduct of an offense of conviction
includes more than one minor being exploited, whether specifically cited in the count of
conviction or not, each such minor shall be treated as if contained in a separate count of
conviction." *Id.* at §2G2.1 cmt. (n.5).

Contrary to Defendant's suggestion, the question is whether the "relevant conduct"
of Defendant's offense of conviction, Count 1, involved the sexual exploitation of more
than one minor—not whether the application of the multiple count adjustment would be
"excessive." USSG § 2G2.1 cmt. (n.5). "Relevant conduct under the guidelines need not
be charged to be considered in sentencing, and it includes all acts and omissions 'that were
part of the same course of conduct or common scheme or plan as the offense of
conviction.'" *United States v. Boesen*, 541 F.3d 838, 851 (8th Cir. 2008) (quoting *United
States v. Radtke*, 415 F.3d 826, 841 (8th Cir. 2005)). Defendant does not dispute the
conduct underlying the offense of conviction, Count 1, included Defendant's filming of the
2005 Recording, which contained pornographic images of two minors, A.B. and K.L.
Defendant also does not dispute that he showed the 2005 Recording to more than one
minor—to A.B. and K.L. As discussed above, this constitutes distribution of child
pornography. Clearly, the relevant conduct in Count 1 involved the sexual exploitation
of more than one minor since both boys were subjected to the 2005 Recording. The fact
Defendant was charged with sexually abusing K.L. in a separate count does not change the
fact that his sexual abuse of A.B. in Count 1 included sexual acts involving both A.B. and
K.L. at the same time.

The court concludes Defendant's "relevant conduct" includes the abuse of more

than one minor because the filming and distribution of the child pornography contained in the 2005 Recording is "part of the same course of conduct [. . .] as the offense of conviction." *Boesen*, 541 F.3d at 851. Accordingly, the court treats the exploited minors, A.B. and K.L., as if they were contained in separate counts of conviction. USSG §2G2.1(d)(1).

### c.    Application

The parties do not dispute that, if the court applies the multiple count adjustment, Defendant should be assessed one unit for A.B. and one unit for K.L., increasing Defendant's offense level by **two**. USSG §3D1.4(a). Accordingly, the court assesses these additional levels against Defendant, bringing his offense level to **44**.

## E.    Acceptance of Responsibility

Defendant raises his fourth objection with respect to acceptance of responsibility. The parties agree Defendant is entitled to a **two-level** reduction for acceptance of responsibility under USSG §3E1.1(a). The court finds Defendant demonstrated acceptance of responsibility for his offense and shall apply this reduction.[5] Additionally, from the context of the government's arguments at the Hearing, the court anticipates the government may ask for an additional **one-level** reduction for acceptance of responsibility pursuant to USSG §3E1.1(b). In the event the government makes this motion and the court grants it, Defendant's adjusted offense level would be reduced to **41**.

## F.    Enhancement under §4B1.5

The parties do not dispute Defendant qualifies for the application of the enhancement in USSG §4B1.5(a) for repeat and dangerous sex offenses against minors.

---

[5] Although the court shall apply the reduction for acceptance of responsibility, the court notes it is unconvinced that Defendant truly feels remorse for all of his abuse. In his interview with Defendant, Detective Bertrand invited Defendant to write apology letters to the three victims. Defendant agreed to do so and wrote apologies to A.B. and K.L. Defendant refused to write an apology to J.M.

### a. *Analysis*

This enhancement applies "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime, §4B1.1 (Career Offender) does not apply, and the defendant committed the instant offense of conviction subsequent to sustaining at least one sex offense conviction[.]" USSG §4B1.5(a)(1).

The offense of conviction, Count 1, is a "covered sex crime." *See id.* cmt. (n.2) (defining "covered sex crime" as an offense perpetrated against a minor under 18 U.S.C. chapter 109A, which lists aggravated sexual abuse). Defendant is not a career offender. Defendant committed the instant offense after sustaining two sex offense convictions, case numbers 5650 and 5653, both for Indecent Contact With a Child, in violation of Iowa Code § 709.8 in the Iowa District Court for Cherokee County ("Iowa District Court"). Defendant was arrested on January 1, 1991 in case number 5650 and on February 11, 1991 in case number 5653. On March 31, 1991, the Iowa District Court imposed concurrent two-year prison sentences on Defendant in both cases. Defendant was released from prison less than one year later. For purposes of the enhancement, however, the court need only consider one of Defendant's prior sex convictions. *See id.* at § 4B1.5(a) (stating enhancement applies if "the defendant committed the instant offense of conviction subsequent to sustaining *at least one* sex offense conviction") (emphasis added). Accordingly, the court only considers Defendant's conduct in case number 5650 for purposes of the §4B1.5 enhancement.

In case number 5650, Defendant was babysitting a nine-year-old boy, J.T., while J.T.'s mother took two of her children to see a doctor. While watching television and wrestling with J.T., Defendant "intentionally grabbed J.T.'s genitals through and under J.T.'s clothing." PSIR at ¶ 73. Defendant admitted he wrestled with J.T. and stated the touching of J.T.'s genitals was "accidental[]." *Id.*

### b. *Application*

The enhancement states that Defendant's offense level should be the greater of (1) the offense level calculated above under Chapters 2 and 3 of the Guidelines or (2) as set forth in USSG §4B1.5(a)(1)(B). USSG §4B1.5(a)(1). Defendant's offense level under Chapters 2 and 3 is **41**. Defendant's offense level under §4B1.5(a)(1)(B) is **37**. *See* 18 U.S.C. § 2241(c) (stating maximum length of imprisonment is term of life, corresponding to offense level of 37 in USSG §4B1.5(a)(1)(B)(i)). Because Defendant's offense level under Chapters 2 and 3 is greater than the offense level calculated under §4B1.5(a)(1)(B), the court applies the greater offense level of **41**.

## VIII. CRIMINAL HISTORY CATEGORY

The parties do not dispute Defendant's criminal history category under the Guidelines. Defendant's sentence for case number 5650 gives rise to **three** points. *See* USSG §4A1.1(a) (adding three points to Defendant's criminal history for "each prior sentence of imprisonment exceeding one year and one month"). This results in a Criminal History Category **II**. *Id.* at Ch. 5 Pt. A. However, because Defendant is subject to the enhancement under §4B1.5(a) because he is a repeat and dangerous sex offender against minors, the court applies the greater of (1) Defendant's criminal history calculated under Chapter 4 or (2) Criminal History Category **V**. USSG §4B1.5(a)(2). Because a Criminal History Category **V** is greater than the Criminal History Category **II** as calculated under Chapter 4, the court concludes Defendant is Criminal History Category **V**.

## IX. PRE-DEPARTURE ADVISORY SENTENCING GUIDELINES RANGE

Prior to the application of any upward departure, Defendant is a **Criminal History Category V** with a total adjusted offense level of **41**. His advisory Sentencing Guidelines range is **360 months to life imprisonment**. *See* USSG Sentencing Table.

## X. DEPARTURES

Defendant raises his fifth and sixth objections with respect to the application of

upward departures pursuant to (1) USSG §4A1.3 for underrepresentation of Defendant's criminal history and (2) USSG §5K2.21 for dismissed and uncharged conduct. The court considers each of these departures below.

## A. *Upward Departure Pursuant to §4A1.3*

First, the court considers whether an upward departure is warranted pursuant to USSG §4A1.3 for underrepresentation of Defendant's criminal history. If a court departs upward under this Guideline, it must explain "the specific reasons why the applicable criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." *Id.* §4A1.3(c)(1). Section 4A1.3(a)(1) provides: "If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted." USSG §4A1.3(a)(1). Among other factors in determining whether to depart upward for underrepresentation of criminal history, the court may consider "[p]rior sentence(s) not used in computing the criminal history category." *Id.* §4A1.3(a)(2)(A). Application Note 3 to §4A1.2 contemplates an upward departure in cases similar to the instant action:

> Counting multiple prior sentences as a single sentence may result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that the defendant presents to the public. In such a case, an upward departure may be warranted. For example, if a defendant was convicted of a number of serious non-violent offenses committed on different occasions, and the resulting sentences were counted as a single sentence because [. . .] the defendant was sentenced for these offenses on the same day, the assignment of a single set of points may not adequately reflect the seriousness of the defendant's criminal history or the frequency with which the defendant has committed crimes.

USSG §4A1.2 cmt. (n.3); *see also United States v. Finn*, No. 93-1112, 1993 WL 264968,

*3 (8th Cir. July 19, 1993) ("When departing upward, the sentencing court may consider convictions excluded from a defendant's criminal history score because [. . .] they were consolidated with other convictions for sentencing purposes."); *United States v. Reifler*, 446 F.3d 65, 112 (2d Cir. 2006) (noting serious crimes committed on different occasions and consolidated for sentencing may result in an underrepresented criminal history category); *United States v. Gutierrez*, No. 99-21147, 2001 WL 273966, *3 (5th Cir. Feb. 12, 2001) (affirming district court's §4A1.2 upward departure because a number of defendant's misdemeanors were uncounted due to consolidation for sentencing purposes).

The PSIR did not attribute criminal history points to Defendant for his conviction in case number 5653 in the Iowa District Court pursuant to USSG §4A1.2(a)(2)(B). This Guideline states:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or as a single sentence. Prior sentences are always counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless [. . .] the sentences were imposed on the same day.

USSG §4A1.2(a)(2)(B). Because Defendant was sentenced for a conviction in case number 5650 the same day he was sentenced for a conviction in case number 5653, no criminal history points were assessed against Defendant for case number 5653.

In light of the foregoing, the court finds Defendant's criminal history points do not accurately reflect his criminal history because his conviction in case number 5653 was not counted. In that case, Defendant babysat his six-year-old nephew, D.K., for approximately five months. On three or four occasions during that time, Defendant performed oral sex on D.K. Defendant touched D.K.'s genitals and had D.K. touch his genitals. Defendant confessed this conduct to law enforcement and indicated he wanted to seek help for his problem, "which had been bothering him for five years." PSIR at

¶ 74.

The fact the court has not previously considered Defendant's conviction in case number 5653 in this sentencing is particularly relevant to the instant analysis; the offense of conviction involves serious, repeated sex crimes against a minor and the uncounted conviction in case number 5653 also involves the serious sexual abuse of a child. This constitutes "reliable information" indicating a significant underrepresentation of Defendant's criminal history and suggests to the court that Defendant is likely to commit other crimes—particularly crimes against children. USSG §4A1.3(a)(1). Case number 5653 underscores Defendant's nature as a serious, dangerous sexual predator of children and should be taken into account in calculating Defendant's criminal history. Indeed, his conduct in that case mirrors the conduct underlying his state court conviction and the instant matter.

Defendant argues the court should not depart upward because the enhancement in §4B1.5 increased him from Criminal History Category II to Criminal History Category V. Defendant argues this higher criminal history category fully represents Defendant's prior convictions.

The Eighth Circuit Court of Appeals addressed a similar issue in *United States v. Cramer*, 414 F.3d 983 (8th Cir. 2005). In *Cramer*, the defendant argued the district court erred by departing upward pursuant to §4A1.3 after enhancing his criminal history under §4B1.5(a). 414 F.3d at 985. The defendant claimed the upward departure constituted unfair double-counting. *Id.* *Cramer* reiterated the familiar principle that a district court may not depart upward based on a factor that a relevant Guidelines provision had taken into account in arriving at a defendant's offense level. *Id.* at 987. In *Cramer*, however, the Eighth Circuit Court of Appeals pointed out §4B1.5(a) did not "specifically consider" the conduct forming the basis of the upward departure at issue, a previous sex-offense conviction. *Id.* The Eighth Circuit Court of Appeals held:

In the instant case, application of [USSG] §4B1.5(a) and [USSG] §4A1.3 do not double count. Section 4B1.5(a) requires that the defendant have at least one prior sex-offense conviction. In contrast, §4A1.3 takes into account evidence of prior sex-offense conduct that did not result in a sex-offense conviction.

*Id.*

In the instant action, the court considers only one of Defendant's prior convictions, case number 5650, in applying the §4B1.5(a) enhancement. It does not consider Defendant's other conviction in case number 5653. Therefore, the court's consideration of Defendant's conviction in case number 5653 for purposes of an upward departure under §2A1.2 does not constitute double-counting.

The court finds that an upward departure would be permitted and appropriate in the instant action under §4A1.3. However, because the pre-departure Guidelines range permits the court to sentence Defendant to a lifetime of imprisonment, the court finds it need not depart upward. Accordingly, the court declines to apply the §4A1.3 upward departure. However, the court shall consider its analysis of the §4A1.3 upward departure when deciding where to sentence Defendant within the advisory Sentencing Guidelines range.

### B. Upward Departure Pursuant to §5K2.21

Next, the court considers the upward departure provision in §5K2.21 for dismissed and uncharged conduct. In discussing the propriety of Chapter 5 departures generally, the Eighth Circuit Court of Appeals stated:

Departures are appropriate if the sentencing court finds that there exists an aggravating or mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described." USSG §5K2.0. The guidelines provide that sentencing courts [are] to treat each guideline as carving out a

> "heartland," a set of typical cases embodying the conduct that
> each guideline describes. When a court finds an atypical case,
> one to which a particular guideline linguistically applies but
> where conduct significantly differs from the norm, a court may
> consider whether a departure is warranted. USSG §1A1.1,
> cmt. n.4(b).

*United States v. Chase*, 451 F.3d 474, 482 (8th Cir. 2006) (formatting altered).

The decision whether to depart from the advisory Sentencing Guidelines rests within the sound discretion of the district court. *See, e.g., United States v. Thin Elk*, 321 F.3d 704, 707-08 (8th Cir. 2003) (reviewing for an abuse of discretion "because the decision to depart embodies the traditional exercise of discretion by the sentencing court" (citations and internal quotation marks omitted)). However, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases[.]" *Koon v. United States*, 518 U.S. 81, 98 (1996). The district court must "carefully articulate the reasons for departure, particularly where the waters are unchartered." *United States v. Reinke*, 283 F.3d 918, 925-26 (8th Cir. 2002).

"The district court is not left adrift [. . .] in determining which cases fall within and which cases fall outside of the 'heartland.'" *United States v. McCart*, 377 F.3d 874, 877 (8th Cir. 2004) (citing *Koon*, 518 U.S. at 94). In USSG §5K2.1, *et seq.*, "[t]he Sentencing Commission enumerated some of the factors that it believed were not adequately accounted for in the formulation of the Guidelines and might merit consideration as aggravating or mitigating circumstances." *Thin Elk*, 321 F.3d at 708 (citing USSG §5K2.0).

Section 5K2.21 allows a court to: "depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range." USSG §5K2.21.

Defendant's final objection relates to the application of an upward departure pursuant to §5K2.21. Defendant argues the government has not met its burden to prove the underlying conduct for this departure by a preponderance of the evidence. The court disagrees. One of the underlying charges the government dismissed is Defendant's sexual abuse of J.M. Defendant does not dispute he repeatedly sexually abused J.M. Similarly, the PSIR contains an underlying potential charge that was not pursued relating to Defendant's involvement with J.M.'s minor friend, T.B. Defendant does not dispute that both boys masturbated in front of him and that he offered to pay $25 to the boy who ejaculated first. The undisputed portions of the PSIR preponderate in favor of a finding that Defendant's conduct included the sexual abuse of J.M. and T.B. And, these facts have not previously entered into the court's determination of Defendant's advisory Sentencing Guidelines range.

The court finds this case falls outside the "heartland" of aggravated sexual abuse cases because Defendant's dismissed and uncharged conduct underscores the fact that Defendant perpetrated his sexual abuse of minors against multiple victims over a period of sixteen years. Also, the dismissed and uncharged conduct indicates Defendant repeatedly exploited his family-type relationship with children as a partner to J.M.'s mother and as a step-grandfather to A.B. and K.L.

The court concludes a §5K2.21 departure would be permissible and appropriate in the instant sentencing. However, as previously noted, the pre-departure advisory Sentencing Guidelines range permits the court to sentence Defendant to a lifetime of imprisonment. For this reason, the court finds it need not depart upward and declines to apply the §5K2.21 upward departure. However, the court shall consider its analysis of the §5K2.21 upward departure when deciding where to sentence Defendant within the advisory Sentencing Guidelines range.

## XI.  FACTORS IN 18 U.S.C. § 3553(a)

In pertinent part, 18 U.S.C. § 3553(a) directs the court to consider the following factors in determining the particular sentence to be imposed:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for [. . .] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [. . .] issued by the Sentencing Commission[;]

(5) any pertinent policy statement [. . .] issued by the Sentencing Commission[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" above. *Id.* However, the court need not explicitly set forth its analysis of all the § 3553(a) factors. *See, e.g.*, *United States v. Lamoreaux*, 422 F.3d 750, 756 (8th Cir. 2005) (quoting *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) ("Nothing in § 3553(a) or in the *Booker* remedy opinion requires 'robotic incantations' that each statutory factor has been considered.").

The court considers the § 3553(a) factors and concludes a sentence at the top end of the Guidelines range is appropriate for Defendant on Count 1. A long term of imprisonment is necessary to protect the public from further crimes by Defendant. Defendant admitted he has a very difficult time controlling his sexual urges around young boys. Previous incarceration has not proved to be an effective way to deter Defendant from abusing children. Defendant himself admits he should be imprisoned. Additionally, Defendant's conduct reflects a relatively sophisticated manipulation of his relationship with his victims' caregivers and highlights his ability to conduct the abuse in circumstances where he is unlikely to be caught.

Additionally, the court finds the nature and circumstances of the underlying offense merit a sentence at the high end of the Guidelines range because Defendant's conduct involves a long history of sexual abuse of half a dozen children as well as the exploitation of his relationship with his victims' families. The Guidelines analysis above does not account for the fact that Defendant engaged in his abuse A.B., K.L. and J.M. numerous times over a period of years. The court also weighs its analysis of the upward departures under §4A1.3 and §5K.21 in concluding that the nature and circumstances of Defendant's offense warrant a sentence at the top of the Guidelines range.

The court also finds a sentence at the high end of the Guidelines range is necessary to reflect the seriousness of Defendant's offense conduct and to provide just punishment for that conduct. The lasting, devastating effect of Defendant's abuse is reflected in the

victim impact statement J.M. supplied to the USPO. In this statement, J.M. stated he experienced the following reactions to Defendant's sexual abuse: anger, anxiety, fear, grief, guilt, numbness, loss of sleep, nightmares, change of appetite, feeling unsafe, trouble concentrating, forgetfulness, depression, chronic fatigue, repeated memory of the crime, fear Defendant would return and uncontrolled crying. He and his family members have been physically affected by this crime due to "self mutilation" and fatigue. PSIR at ¶ 27.B. J.M. stated Defendant's actions emotionally affected him and his family because they experienced confusion of sexuality, trust issues, isolation and distance between each other. J.M. stated that, since experiencing abuse from Defendant, he has been unable to trust people, has acted out and pushes people away. J.M. feels threatened by Defendant and believes that, if Defendant were released, he would "come after [J.M.] or [J.M.'s] family." *Id.* at ¶ 27.I. J.M. also feels he is somehow responsible for Defendant's crime and that he allowed Defendant to victimize others because he did not speak up sooner. J.M. describes Defendant as manipulative, since "he looked up to him as a father." *Id.* at ¶ 27.K. J.M. stated that Defendant supplied his mother's drug habit and convinced her J.M. was lying about Defendant's abuse. J.M. has attempted suicide.

The court also notes that, after Defendant's abuse of J.M. ended, J.M. turned to drugs and crime. Due to Defendant's abuse, J.M. believed he needed to prove to his peers that he was not homosexual. As a result, when J.M. was nineteen years old, he engaged in a sexual relationship with a thirteen-year-old female. The victim's parents learned about this relationship and informed law enforcement. J.M. is currently imprisoned for this offense. Clearly, the impact of Defendant's abuse has far-reaching implications. The court finds a lesser sentence would not adequately reflect the seriousness of Defendant's offense, promote respect for the law or provide just punishment.

## XII. DISPOSITION

After all applicable adjustments and departures, the court finds Defendant's final

advisory Sentencing Guidelines range is **360 months to life**. After considering all of the § 3553(a) factors, the court finds a **sentence of a term of 470 months** is appropriate for Defendant on Count 1. The court shall impose this sentence on Defendant when the hearing resumes on May 27, 2009.

       **IT IS SO ORDERED.**

       **DATED** this 26th day of May, 2009.

_____

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA